UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ALTAIR PRODUCTDESIGN, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> Defendants. | Case No. 18-13493 <br> Honorable Laurie J. Michelson <br> Magistrate Judge Mona K. Majzoub |
| ALTAIR PRODUCTDESIGN, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> Defendants. | Case No. 18-13967 <br> Honorable Laurie J. Michelson <br> Magistrate Judge Mona K. Majzoub |

**OPINION AND ORDER DENYING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT [Case Nos. 18-13493, 18-13967]**

Altair ProductDesign, Inc. is a "provider of engineering staffing services" that places its employees with other companies. (Case No. 18-13493, ECF No. 12, PageID.98; Case No. 18-13967, ECF No. 1, PageID.2.) Altair sought H-1B visas on behalf of several of the company's workers that were going to be placed in engineering positions with Ford and FCA. U.S. Citizenship and Immigration Services—a division of the Department of Homeland Security—denied the

applications of these employees.[1] Those 12 visa-seekers as well as Altair filed suit and then moved for summary judgment. (Case No. 18-13493, ECF No. 22; Case No. 18-13967, ECF No. 26.) As explained below, the Court DENIES the plaintiffs' motions.

## I.

Altair contracts with corporate clients around the world to provide engineering services. In order to fulfill those contracts, Altair hires individuals with engineering degrees and places them at the clients' worksites. Many of these employees are nonimmigrant foreign nationals who require visas to work in the United States. Altair filed the visa petitions at issue with USCIS on April 12, 2018. The petitions contained materials such as passport copies, subcontractor agreements, and educational records. (Case No. 18-13493, ECF. No. 15-1, PageID.341–398.) These petitions also included contracts between Altair and the end clients Ford and FCA, staffing agreements, employment offer letters from Altair, and a brief description of each employee's proposed position and duties.

For example, Altair sought to place Karan Mangaonkar at Ford as a "Fuel Economy and Performance Engineer" tasked with eight duties:

- Vehicle program fuel economy development from pre-programming start to postcertification.
- Developing and implementing of systems engineering to achieve best in class fuel economy.
- Developing CAE vehicle fuel economy models to walk to future model years.
- Achieving fuel economy targets and working with interfacing engineering activities to ensure successful implementation.

---

[1] Altair filed a case on behalf of itself and six employees who had been assigned to work at Fiat Chrysler Automobiles. (Case No. 18-13493, ECF Nos. 1, 12.) Shortly after, it filed a companion case along with 13 of its workers who had been assigned to Ford Motor Company. (Case No. 18-13967, ECF No. 1.) Since that time, USCIS has granted new H-1B applications on behalf of seven individuals, whom the court dismissed from the litigation (Case No. 18-13967, ECF Nos. 29, 32; Case No. 18-13493, ECF No. 32), leaving 12 individuals and Altair as plaintiffs.

- Testing and validating vehicle of the subsystem performance on global fuel economy drive cycles.
- Developing timing and test plans for design validation work.
- Competing with analytical forecasting of fuel economy capability.
- Testing BIC vehicles and data analysis.

(Case No. 18-13967, ECF No. 18-1, PageID.2060.)

In another instance, Yash Bharat Khakhar would have been placed at Fiat Chrysler as a "Mechanical Product Engineer," where the role would have included:

- Designing and developing a product/product family.
- Ensuring production procedures efficiently utilize materials and personnel.
- Testing finished product for quality purposes and recommending changes to product specifications as necessary.
- Signing off on and tracking vehicle crash testing.
- Assisting with packaging and presenting proposals to the team.
- Performing vibration analysis.

(Case No. 18-13493, ECF No. 19-1, PageID.2109.)[2]

In response to the H-1B petitions, USCIS requested additional information to "establish that [the company] will employ the beneficiary in a specialty occupation." (Case No. 18-13493, ECF No. 19-1, PageID.2229.) Such documents, the government advised, could include "[c]opies of signed contractual agreements, statements of work, work orders or . . . [a]ny other evidence you feel will meet the requirement." (*Id.*, PageID.2229–2230.) In response, Altair provided some additional information, such as paystubs and email records confirming that the job position required at least a bachelor's degree. (Case No. 18-13493, ECF No. 17-1, PageID.1193–1195; Case No. 18-13967, ECF No. 18-1, PageID.2160.)

---

[2] The 10 other individual plaintiffs are Kiran Arvind Ambekar, Vijay Kumar Chenegarapu, Tahmina Gouhar, Hongtao Gu, Yeuheng Huang, Venkata Jakka, Abhishek Vasant Kad, Chandrasekar Ramasubramanian, Smriti Tripathi, and Qian Wang. (Case No. 18-13493, ECF No. 12, PageID.98; Case No. 18-13967, ECF No. 1, PageID.2.)

Ultimately, USCIS denied each H-1B application in late 2018 or early 2019. In all 12 cases, USCIS found that Altair failed to prove by "a preponderance of the evidence" that the employee "qualifie[d]" for a "specialty occupation" and would perform that occupation "for the requested period of intended employment." (Case No. 18-13967, ECF No. 12-1, PageID.202–203.) Some, but not all, of the decisions also stated that Altair failed to demonstrate that it had the requisite employer-employee relationship with the individual. (Case No. 18-13967, ECF No. 13-1, PageID.384.)

## II.

When a federal court reviews a final agency action, the usual rules and standards governing summary judgment do not apply. *See Alexander v. Merit Sys. Prot. Bd.*, 165 F.3d 474, 480-81 (6th Cir. 1999). Summary judgment "serves as the mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and is otherwise consistent with" the standard of review under the Administrative Procedure Act ("APA"). *Conservation Law Found. v. Ross*, 374 F. Supp. 3d 77, 88 (D.D.C. 2019).

Under the APA, a federal court may "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Simms v. Nat'l Highway Traffic Safety Admin.*, 45 F.3d 999, 1003 (6th Cir. 1995). In reviewing agency action under this deferential standard, a court "may not substitute its judgment for that of the agency even if the court might otherwise disagree with the agency's decision." *Fast Gear Distrib., Inc. v. Rodriguez*, 116 F. Supp. 3d 839, 844 (E.D. Mich. 2015) (citing *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989)).

An agency's factual findings are reviewed under the substantial evidence standard. *See Steeltech, Ltd. v. U.S. Envtl. Prot. Agency*, 273 F.3d 652, 657 (6th Cir. 2001). Under this standard,

review of an agency's "factual determinations is limited to determining whether those determinations are supported by substantial evidence on the record as a whole—not whether there was substantial evidence in the record for a result other than that arrived at by" the agency. *Id.* In the immigration context, this standard means that an agency finding "can be reversed only if a reasonable factfinder *would have to* reach another conclusion." *Smith v. Chater*, 99 F.3d 780, 782 n.3 (6th Cir. 1996) (emphasis added) (citing *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)).

### III.

### A.

The H-1B employment visa takes its name from the relevant subsection of the U.S. Code: 8 U.S.C. § 1101(a)(15)(H)(i)(b). That subsection permits non-immigrants to be admitted into the country "to perform services . . . in a specialty occupation." *Id.* The employer and the petitioner have the burden of proof to show that the position sought is a "specialty occupation" and that the petitioner is qualified for that position. *See EG Enters. v. Dep't of Homeland Sec.*, 467 F. Supp. 2d 728, 734 (E.D. Mich. 2006); 8 U.S.C. § 1361.

For an occupation to be considered "specialty," the position requires both "theoretical and practical application of a body of highly specialized knowledge" and "attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." 8 U.S.C. § 1184(i)(1). By regulation, "specialty occupation" means:

> an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts, and which requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States.

5

8 C.F.R. § 214.2(h)(4)(ii); *see also id.* § 214.2(h)(4)(iii)(A) (explaining further the criteria for a specialty occupation).

B.

Plaintiffs advance two primary arguments in support of summary judgment. First, they contest the government's conclusion in six cases that no employer-employee relationship existed between Altair and the petitioner employees (and argue that USCIS improperly relied on a new agency memo). (Case No. 18-13493, ECF No. 22, PageID.3307–3312; Case No. 18-13967, ECF No. 26, PageID.4407–4413.) Second—and relevant to all 12 denials—plaintiffs argue that USCIS abused its discretion in concluding that Altair had not shown that its employees would work in a "specialty occupation." (Case No. 18-13493, ECF No. 22, PageID.3313; Case No. 18-13967, ECF No. 26, PageID.4414.)

The Court will address the second point first.

According to USCIS, the petitioners failed to show that the work assignment for each employee qualified as a specialty occupation. USCIS interpreted the described employment duties as "high-level and vague." (Case No. 18-13493, ECF No. 23, PageID.3325; Case No. 18-13967, ECF No. 27, PageID.4425.) In particular, USCIS found that the documents provided did not give "a detailed description of the specialized duties the beneficiary will perform, the qualifications required to perform those duties, and any other related evidence." (Case No. 18-13967, ECF No. 12-1, PageID.202.) According to the agency, Altair failed to show that "the actual work to be performed by the beneficiary will be in a specialty occupation based on the work requirements imposed by the end-client who uses the beneficiary's services." (*Id.* (citing *Defensor v. Meissner*, 201 F.3d 384, 387 (5th Cir. 2000)).)

Plaintiffs spend less than a page in each motion to address this issue. In cursory fashion, they give two reasons why the agency erred. First, they say, all 12 employees are engineers with master's degrees from U.S. universities, which alone shows that the individuals were qualified for specialty occupations. (Case No. 18-13493, ECF No. 22, PageID.3313; Case No. 18-13967, ECF No. 26, PageID.4414.) Second, the briefs add, without any elaboration, that the letters provided by Ford and Fiat Chrysler "describe the positions in detail so there can be no doubt that [petitioners] are serving in the engineering positions described in the H-1B petitions."

The argument misses the mark. Under the legal framework stated above, a "specialty occupation" must meet two criteria. A person's "attainment of a bachelor's or higher degree in the specific specialty" is only half of the equation. *See* 8 U.S.C. § 1184(i)(1). The occupation at issue also must "require[] . . . theoretical and practical application of a body of highly specialized knowledge." *See id.* The denials from USCIS identified a lack of corroboration that job positions such as "Fuel Economy and Performance Engineer" and "Mechanical Product Engineer" satisfied this two-part test. And as a recent opinion in this District stated, "listing job duties corresponding with a specialty position is not enough to meet the evidentiary burden." *Altimetrik Corp. v. USCIS*, No. 18-11755, 2019 WL 4746756, at *6 (E.D. Mich. Sept. 30, 2019); *see also Tianhai Elec. N. Am., Inc. v. Johnson*, No. 14-10016, 2015 WL 12731911, at *4 (E.D. Mich. Dec. 8, 2015) ("[T]he Court still does not know what [applicant's] job actually entails. Many of the job descriptions offer little insight into his day-to-day role at the company, or whether that role satisfies the regulations.").

Ultimately, there is substantial evidence to support the decisions of USCIS regarding specialty occupations. To be sure, Altair's petitions contained written lists of some general duties. *Cf. DEP-Autoline, Inc. v. Napolitano*, No. 13-1385, 2014 WL 12573669, at *4 (C.D. Cal. Oct. 23,

7

2014) (finding that there was little evidence of job responsibilities except for the word of a human resources manager). But USCIS advised that the petitions did not provide sufficient evidence that there were specific and non-speculative work assignments at the off-site locations where the petitioners were to be employed. So USCIS asked for more documents like signed contracts and work orders. They wanted to know the projects the petitioners would be working on, whether their specific work assignments required the theoretical and practical application of a body of highly specialized knowledge, and detailed descriptions of the duties they would be performing on those assignments.

For reasons unexplained, Altair did not produce the requested corroboration. Instead, USCIS had to make its decisions based on job descriptions—like developing "timing and test plans for design validation work" and assisting with "packaging and presenting proposals to the team"— that did not clearly depict what the employee would be doing at work on a day-to-day basis. Those duties *could* require "highly specialized knowledge," but not necessarily. Thus, USCIS had a reasonable basis to find that, in the absence of "contracts, service agreements, work orders[,] statements of work" and the like, the record did "not establish the [actual] work to be completed . . . and that the [petitioners] will perform services in a specialty occupation." (Case No. 18-13493, ECF. No. 15-1, PageID.203.) Plaintiffs also briefly dispute the burden of proof used in the rulings (Case No. 18-13493, ECF No. 22, PageID.3297; Case No. 18-13967, ECF No. 26, PageID.4397), but the agency made clear that it applied the correct preponderance-of-the-evidence standard (Case No. 18-13493, ECF. No. 15-1, PageID.204). Overall, as in a similar case affirming H-1B denials, "the job duties listed by [the employer] are vague enough that USCIS could reasonably conclude that Plaintiffs had not satisfied their burden to show that [the employees] would actually be

performing" occupations that met the criteria. *See KPK Techs., Inc. v. Cuccinelli*, No. 19-10342, 2019 WL 4416689, at *6 (E.D. Mich. Sept. 16, 2019).

In their briefs, plaintiffs spend most of their ink discussing the question of employer-employee relationships. But the Court need not consider this additional issue. *See Galaxy Software Sols., Inc. v. USCIS*, No. 18-12617, 2019 WL 2296824, at *8 n.5 (E.D. Mich. May 30, 2019); *Altimetrik Corp. v. Cissna*, No. 18-10116, 2018 WL 6604258, at *6 n.6 (E.D. Mich. Dec. 17, 2018). When it comes to USCIS's determination regarding specialty occupations, the agency did not act in a matter that was arbitrary and capricious. The Court must not "substitute its judgment for that of the agency even if the court might otherwise disagree with the agency's decision." *See Fast Gear*, 116 F. Supp. 3d at 844. USCIS's H-1B visa denials were supported by substantial evidence on the record as a whole, i.e., this is not a case in which a "reasonable factfinder would have to reach another conclusion." *See Smith*, 99 F.3d at 782 n.3.

## IV.

For the reasons explained above, the Court DENIES Plaintiffs' motions for summary judgment and upholds USCIS's decisions.

IT IS SO ORDERED.

Dated: October 22, 2019

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE